**AFFIRMED and Opinion Filed August 3, 2022**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-21-00608-CR

**SCOTT EUGENE KILMER, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 59th Judicial District Court**
**Grayson County, Texas**
**Trial Court Cause No. 068314**

## MEMORANDUM OPINION

Before Justices Molberg, Reichek, and Garcia
Opinion by Justice Reichek

Scott Eugene Kilmer was charged with three counts of invasive visual recording after he was caught recording images underneath women's dresses with a camera attached to his boot. After the trial court denied his motion to suppress evidence, appellant entered an open plea of guilty. After hearing the evidence, the trial court assessed punishment at two years in state jail in each case and added a $1000 fine in count one. On appeal, appellant challenges the trial court's ruling on

his suppression motion.  For reasons set out below, we affirm the trial the trial court's judgment.[1]

## BACKGROUND

Appellant was a police officer for Bells Police Department in Grayson County.  On March 11, 2017, appellant was working off-duty security at a private wedding venue; he was dressed in his Bells police officer uniform and using his Bells police patrol vehicle.

Over the course of the evening, some guests noticed appellant placing his foot between the legs of unsuspecting women and "videoing up their skirt" with a small camera attached to the top of his boot.  Grayson County sheriff's deputies were called to the scene.  When deputies arrived, one of the guests gave them a covert camera with a long wire and plug, which connected to an external recording device.  The guest said he removed the camera from the "security guard," who was identified as appellant.

Although the incident fell within the jurisdiction of GCSO, the owner and manager of the wedding venue contacted appellant's commanding officer, Bells Police Chief Lee Culley.  Culley went to the scene and spoke to the on-scene deputies.  Culley was apprised of the allegations but was skeptical and went to talk

---

[1] We note that the State of Texas elected not to file a brief in this case and provided no explanation for not doing so.

to appellant. Appellant told Culley he was wearing the camera because he was supposed to meet with a confidential informant later that evening. Culley asked about the external recording device, and appellant said he had left it at home.

Appellant told Culley that he did not have "any problem" with the vehicle being searched. Appellant shone a flashlight while Culley looked through the car. Culley found the recording device under the passenger seat hidden by paper towels. Once Culley removed the device, he could not remember how to operate it and appellant tried to help him turn on the camera by showing him which buttons to push. At one point, appellant told Culley to "kill the camera," meaning to "cut it off," because appellant believed the battery was going to die. Although Culley acknowledged that he had the feeling appellant did not want the camera to be turned on, he also said that appellant never unequivocally told him to give it back and believed he had appellant's consent to search the device. Ultimately, Culley accessed the device, which showed recordings up women's dresses and skirts, consistent with what witnesses reported.

Culley testified that on the night of the incident, he was unsure whether the device he found had been purchased by appellant or by the Department. According to Culley, appellant had previously purchased a camera and recording device, which Culley had approved for use in police investigations. The Department purchased identical devices, which appellant would switch out with his personal one. These

devices did not have removable batteries and had to be recharged periodically, which is why appellant was known to swap out devices with the Department. Given these facts, Culley did not know whether the device he found in the patrol car that night was the one purchased by appellant or by the Department since the devices were identical and had been previously commingled.

Regardless, Culley took the position that even if appellant purchased the camera/device, he did not "own" it but was "using it for police purposes, authorized by our policy - - our body cam policy." Under that policy, Culley said, the Department was allowed to view any images contained on the device, whether used on or off duty, without any information requests because it was to be used solely for law enforcement purposes. Culley, however, acknowledged that he had not told appellant the device was subject to search. Culley was asked hypothetically whether appellant would have had the "right" to take the camera with him if he had quit the police force (if this incident had never occurred), and Culley replied, "Not the images on it."

Appellant sought to suppress the video and photographic evidence contained on the device and any evidence that was "fruit of the poisonous tree." The trial court denied the motion. When a new judge assumed the bench, appellant filed a motion to reconsider claiming that Culley's search of the device, which he owned, was illegal. The State, however, argued that although the camera was purchased by

4

appellant, he essentially gave it to the Bells Police Department to use in police investigations, and that Bells Police Department had the right to enter a Bells police car to retrieve the camera used by a Bells police officer. The trial court denied the motion to reconsider.[2]

The trial court made findings of fact and conclusions of law. Relevant to this appeal, the conclusions of law included (1) appellant had no expectation of privacy in the camera seized from his person and the recording device recovered from the Bells PD patrol vehicle on the date of the offense; (2) appellant had no expectation of privacy in the recording equipment he possessed solely for the stated purpose of use in law enforcement investigations; (3) appellant impliedly consented to the search of the recording device by assisting Culley in the search for the device and by assisting Culley in activating and accessing the recordings contained on said device; and (4) the search warrant and accompanying affidavit for the items seized at the wedding venue and from appellant's residence sufficiently established probable cause for the requested searches within the four corners of the documents.

---

[2] The trial court considered three video discs containing body camera footage from that night. These videos were not brought up on appeal, and appellant has not relied on them in his factual statement or argument.

ANALYSIS

In five issues argued together, appellant generally challenges the above conclusions of law supporting the denial of his motion to suppress. He contends generally that he has a right of privacy in the recording device found in the squad car since it is his "personal property," and Culley's search of it without a warrant was illegal and he did not impliedly consent to a search. As authority, he makes only general references to two cases: *Riley v. California*, 573 U.S. 373 (2014), and *Garrity v. New Jersey*, 385 U.S. 493 (1967). He does not analyze the holdings of either case within the context of the facts of this case or otherwise explain their relevance to his case.

*Riley* involved the warrantless search of a defendant's cellphone incident to a lawful arrest. 573 U.S. at 378–79. Although the court acknowledged that searches incident to arrest are reasonable in limited circumstances—to protect the officer's safety or to prevent destruction of evidence—the court determined that searching the data on a cellphone did not further those interests; arrestees could not use a cellphone as a weapon and seizing a cell phone was sufficient to prevent destruction of evidence contained in the data. *See id*. at 387–88. But the trial court here did not base its decision on a search incident to arrest.

In *Garrity*, the attorney general was investigating irregularities in the handling of cases in municipal court and questioned some police officers. Before being

6

questioned, each officer was warned that (1) anything he said might be used against him in any state criminal proceeding; (2) he had the privilege to refuse to answer if the disclosure would tend to incriminate him; but (3) if he refused to answer, he would be subject to removal from office. 385 U.S. at 494. The court held that "the protection of the individual under the Fourteenth Amendment against coerced statements prohibits use in subsequent criminal proceedings of statements obtained under threat of removal from office, and that it extends to all, whether they are policeman or other members of our body politic." *Id*. at 500.

Although appellant argues Culley admitted that appellant was facing suspension if he did not assist in the search, there is no evidence in the record that Culley told appellant he would be suspended if he did not cooperate. Thus, appellant has not shown *Garrity* applies.

In sum, appellant has directed us to two substantive cases of minimal if any relevance and avoided briefing the issue before the trial court: the extent of his legitimate expectation of privacy in the recording device which he was authorized by Culley to use only for law enforcement purposes. We therefore conclude appellant has not shown reversible error. We overrule his issues.

We affirm the trial court's judgment.

/Amanda L. Reichek/
AMANDA L. REICHEK
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
210608F.U05



## Court of Appeals
## Fifth District of Texas at Dallas
## JUDGMENT

SCOTT EUGENE KILMER,
Appellant

No. 05-21-00608-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 59th Judicial
District Court, Grayson County,
Texas
Trial Court Cause No. 068314.
Opinion delivered by Justice
Reichek; Justices Molberg and
Garcia participating.

     Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered August 3, 2022